IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DERRICK BURLEY | : | CIVIL ACTION |
| | : | |
| | : | |
| v. | : | NO. 04-4568 |
| | : | |
| JO ANNE B. BARNHART, | : | |
| COMMISSIONER | : | |

**MEMORANDUM AND ORDER**

**Juan R. Sánchez, J.**                                                                                          **September 9, 2005**

Derrick Burley claims he suffers from a disabling mental impairment entitling him to Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI).[1] This Court concludes the Administrative Law Judge (ALJ) properly weighed the medical evidence on the record and made a decision supported by substantial evidence to deny DIB and SSI. Accordingly, this Court approves and adopts the well-reasoned Report and Recommendation of U.S. Magistrate Judge Timothy R. Rice and grants the Motion for Summary Judgment by the Commissioner of the Social Security Administration.

**PROCEDURAL HISTORY**

Burley filed applications for DIB and SSI in March 2003 alleging disability since March 3, 2003. After the state agency denied Burley's claim on August 6, 2003, Burley filed a timely request for an ALJ hearing with an amended onset date of December 30, 2002. (R. 93). On August 2, 2004,

---

[1]Burley brings this action under Titles II and XVI, respectively, of the Social Security Act (Act). 42 U.S.C. §§ 401-433, 1381-1383f.

1

ALJ Alan Sacks denied DIB and SSI.[2] The Appeals Council of the Social Security Administration denied Burley's request to review the ALJ's decision on September 14, 2004. (R. 5-7). Burley then filed a timely appeal to this Court.

**FACTS**

Burley is a 35 year-old man who suffered from a traumatic childhood. (R. 302). Burley's mother and stepfather subjected him to physical abuse, an uncle sexually abused him, and he endured years of foster care and group homes. Burley currently lives in a boarding home where he avoids social contact by having the boarding home staff perform his household chores for him. Burley has a history of drug (primarily marijuana) and alcohol abuse beginning at age eleven and continuing until July 2003. (R. 291). During the June 2004 ALJ hearing, Burley's medicine regime included an antipsychotic, a mood stabilizer, an antianxiety drug, and a drug for his sleep disorder. (R. 75-76).

Burley has an 11th grade education and no transferable skills. (R. 302, Finding No. 6). From 1984 to 2002, Burley engaged in substantial gainful activity, albeit with an unstable employment history, including work as a security guard, a porter at a private club, a houseman in a hotel, an office cleaner, and a cook's helper. Burley reported having difficulty maintaining jobs due to difficulties working with coworkers and supervisors. (R. 174). Indeed, Burley testified his jail sentence from April to June 2002, which stemmed from a guilty plea for stalking a former co-worker, led to his current debilitating depression.

---

[2] The ALJ concluded Burley retained the residual function capacity (RFC) to perform past relevant work, except work as a security guard, and other unskilled jobs existing in the national economy despite being severely impaired by major depression and a substance abuse disorder. (R. 26, Findings No. 2, 7).

Burley first was diagnosed with a conduct disorder based on uncontrolled behavior, depression, anger *inter alia* during a 35-day inpatient commitment to the Philadelphia Child Guidance Clinic in 1984. No additional relevant treatment records appear in the record until February 2003 when Burley admitted himself to Einstein Medical Center, where he was diagnosed with major depression.

Several additional doctors have diagnosed Burley's depression since February 2003. John Howkins, M.D. of the Consortium, a psychiatric counseling center, conducted an initial psychiatric evaluation in March 2003. (R. 252-257). Dr. Howkins deemed Burley temporarily disabled with major depression until March 4, 2004 on a medical assessment form. (R. 179). Dr. Howkins also assigned Burley a global assessment of functioning score (GAF) of 50 equating to an inability to work. A GAF assessment represents a physician's subjective judgment concerning a patient's overall level of functioning. Burley was assigned a GAF of 40 while at the Einstein Medical Center. (R. 224).

Burley underwent a consultative psychological evaluation with Charles Johnson, Ph.D. in July 2003. Dr. Johnson diagnosed Burley with an adjustment disorder with depressed mood and a substance abuse disorder. (R. 182). Dr. Johnson concluded, however, Burley's disabilities posed at most moderate limitations in work-related mental activities.[3] (R. 184). In February 2004, Edwin Adom, M.D. determined Burley would be temporarily disabled with major depression until February 2005. Similarly, following a March 2004 examination, therapist Mark Fenichel, M.Ed. of the Consortium diagnosed Burley as having marked limitations, precluding the ability to perform any

---

[3]In July 2003, Christopher King, Psy. D., substantiated Dr. Johnson's conclusions and found Burley's affective disorder and substance addiction disorder were not severe. (R. 186-200).

gainful activity, in many areas of work-related mental activities, activities of daily living and social interaction, even absent drug or alcohol abuse.  (R. 248-251).

During the ALJ hearing, psychiatrist Richard Saul, M.D. appeared as an independent expert medical advisor who reviewed the entire record and heard Burley's testimony.  (R. 291, 294).  Dr. Saul testified that Burley's drug use significantly contributed to his impairments until late 2003.  (R. 66, 71).  While recognizing Burley had major depression and a substance abuse disorder, Dr. Saul nevertheless concluded these impairments did not rise to the required level of severity under the Social Security Act.[4]  Adopting Dr. Saul's findings, the ALJ then concluded, with the testimonial support of vocational expert Mindy Lubec, Burley's impairments restricted him to simple, routine, low-stress work involving low contact with others.  Such work included Burley's prior relevant work, except work as a security guard, and other unskilled jobs existing in the national economy such as a janitor or locker room attendant.

---

[4]Specifically, Dr. Saul found:
1. Restriction of Activities of Daily Living - moderate.  Dr. Saul based this on Burley's capacity to maintain grooming and hygiene; read; watch television; write poetry; use public transportation; manage money; and speak regularly with a friend. (R. 61-62).
2. Difficulties in Maintaining Social Functioning - moderate.  Dr. Saul noted that while Burley avoids social contact, he maintained a friendship, had a girlfriend until February 2003, and gets along with the residents at the boarding house.  Moreover, although Burley indicated he frequently had been involved in violent incidents since the onset date, Dr. Saul found the claim unsubstantiated by the record.  (R. 62-63).
3. Deficiencies of Concentration, Persistence or Pace - moderate until July 2003, and mild since then.  The moderate listed corresponded with Burley's period of substance abuse.  Since ceasing drug abuse, evidence of Burley's improved concentration includes performing the serial "7s" test, reading, watching television, and managing money.  (R. 63-67).
4. Episodes of Deterioration or Decompensation - none.  Dr. Saul further noted Burley had not met any of the "C" criteria in Section 12.04 of Affective Disorders, such as repeated, extended episodes of decompensation or the need for a highly supportive living arrangement in order to function.  (R. 61).

**DISCUSSION**

Burley's principle contention is that the ALJ failed to assign controlling weight due to the opinions of his treating sources. This Court is bound by the ALJ's factual findings supported by substantial evidence in the record. *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing 42 U.S.C. § 405(g)). Substantial evidence is defined as "more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). It represents "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401; *Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003). In determining whether substantial evidence exists, this Court may not weigh the evidence or substitute its own conclusions for that of the ALJ. *Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002). At the same time, however, this Court must remain mindful that "leniency [should] be shown in establishing claimant's disability." *Reefer*, 326 F.3d at 379 (quoting *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979)).

To be considered disabled and eligible for social security DIB and SSI, Burley must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 416.905(a).[5]  Burley would be considered unable to engage in any

---

[5]Regulation 20 C.F.R. 416.972 defines substantial gainful activity as follows: Substantial gainful activity is work activity that is both substantial and gainful: (a) Substantial work activity is work activity that involves doing significant physical or mental activities. Work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before. (b) Gainful work activity is work activity that you do for pay or profit. Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized.

substantial gainful activity "if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A); *Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999). The ALJ applied a five-step sequential evaluation process pursuant to 20 C.F.R. §§ 404.1520, 416.920, in determining Burley was not disabled under the regulations.[6]

The ALJ found the threshold criteria in Steps 1 and 2 were met. Burley has not engaged in substantial gainful activity since the alleged disability onset date and his severe impairments, namely major depression and a substance abuse disorder, lasted for more than twelve months. (R. 14-16). At Step 3, the ALJ concluded Burley's severe impairments did not meet or equal the criteria of any impairment listed in Appendix , Subpart P, Regulations No. 4, Sections 12.04 and 12.09. (R. 16-19,

---

[6]The five-step sequential evaluation process is:
> 1. If the claimant is doing substantial gainful activity, he is not disabled. If the claimant is found not to be engaged in substantial gainful activity, proceed to Step 2. 20 C.F.R. §§ 404.1520(b), 416.920(b).
> 2. The claimant's impairment(s) must be "severe," meet the duration requirement in 20 C.F.R. §§ 404.1509, 416.909, and significantly limit his physical or mental ability to do basic work activities before a finding of disabled is directed. If the claimant has a severe impairment(s), proceed to Step 3. 20 C.F.R. §§ 404.1520(c), 416.920(c).
> 3. If the claimant has a severe impairment(s) that has lasted or is expected to last for a continuous period of at least twelve months, and the severe impairment(s) is listed in Appendix 1 of Subpart P of Part 404 of 20 C.F.R. or is equal to a listed impairment(s), the claimant is presumed disabled without further inquiry. 20 C.F.R. §§ 404.1520(d), 416.920(d).
> 4. If the claimant retains residual functional capacity to do his past relevant work, he is not disabled. 20 C.F.R. §§ 404.1520(e), 416.920(e).
> 5. The inquiry at this step is whether the claimant can do other work that exists in significant numbers in the national economy that accommodates his residual functional capacity and vocational factors. 20 C.F.R. §§ 404.1520(g), 416.920(g).

Finding No. 2).  At Steps 4 and 5, the ALJ accepted the vocational expert's testimony indicating Burley could return to prior relevant work, except work as a security guard, as well as perform other unskilled jobs existing in significant numbers in the national economy.  (R. 24-25, Finding No. 7).

Burley specifically argues the ALJ improperly rejected the opinion of Dr. Fenichel. Generally, the findings and opinions of treating physicians should be given controlling weight, 20 C.F.R §§ 404.1527(d)(2), 416.927(d)(2); *Rutherford*, 399 F.3d at 554 (citing *Mason v. Shalala*, 994 F.2d 1058, 1067 (3d Cir. 1993)), especially "when their opinions reflect expert judgment over a prolonged period of time." *Plummer*, 186 F.3d at 429 (quoting *Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d Cir. 1987)).  The weight given to these opinions, however, depends upon the extent to which it is supported by medically acceptable clinical and laboratory diagnostic techniques and with other substantial evidence in the record.  20 C.F.R §§ 404.1527(d)(2), 416.927(d)(2); *Coria v. Heckler*, 750 F.2d 245, 247 (3d Cir. 1984).  An ALJ may reject a treating physician's opinion "only on the basis of contradictory medical evidence," *Plummer*, 186 F.3d at 429, or if the opinion is unsupported by medical data. *Newhouse v. Heckler*, 753 F.2d 405, 408 (3d Cir. 1985) (finding ALJ justified in rejecting treating physician's unsupported medical conclusions).  When a conflict exists between the opinions of a treating physician and a non-treating/non-examining physician, as in the instant case, the ALJ can credit either but "cannot reject evidence for no reason or for the wrong reason." *Mason*, 994 F.2d at 1066.  "The ALJ must consider all the evidence and give some reason for discounting the evidence she rejects," *Plummer*, 186 F.3d at 429 (citing *Stewart v. Secretary of H.E.W.*, 714 F.2d 287, 290 (3d Cir. 1983)), and must not make speculative inferences from medical evidence. *Smith v. Califano*, 637 F.2d 968, 972 (3d Cir. 1981).

This court finds the ALJ properly weighed the conflicting medical evidence and made a

reasonable, fact-based decision supported by substantial evidence. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). In crediting the opinion of the independent expert medical advisor, psychiatrist Richard Saul, M.D., over the treating physicians (especially the diagnosis of Mark Fenichel, M.Ed.), the ALJ cited several specific and substantial justifications for his decision.[7] The findings of Dr. Johnson, psychologist Christopher King, and Dr. Adom substantiate Dr. Saul's assessment.[8] This medical evidence combined with Dr. Saul's objective expert opinion satisfy the substantial evidence standard of review that binds this court.

The ALJ appropriately explained his reasons for rejecting the opinions of the treating physicians. Regarding Fenichel's diagnosis, the ALJ found Burley's engagement in certain activities such as reading, watching television, traveling alone on public transportation, getting along with boarding house residents, managing money and speaking regularly with a friend, to contradict Fenichel's finding of "marked limitation in activities of daily living, social functioning and concentration, persistence and pace, and...in many categories of work-related mental functioning, even in the absence of substance abuse." (R. 293). The ALJ additionally factored in Fenichel's

---

[7]Dr. Saul: a) is a highly regarded Board-certified psychiatrist; b) testified as an independent medical expert based on extensive experience in that capacity; c) reviewed and assessed the entire medical record; d) heard and evaluated the claimant's hearing testimony; d) has extensive familiarity with the Social Security Administration's criteria for evaluating disability under the Listing Sections in the Appendix and for determining residual functional capacity; e) thoroughly explained his opinions, which were well-grounded in medical source documentation and were consistent with Dr. Johnson's conclusions; f) gave opinions not substantially contradicted by other medical evidence except for treating source opinions; and g) gave opinions conforming with the ALJ's own impression of the claimant's level of functioning. (R. 299-300).

[8]Dr. Johnson and Christopher King, Psy. D., concluded Burley did not suffer from any "marked" limitations. (R. 184, 196). Dr. Adom similarly concluded Burley was "doing well on current meds and dosage regime" on February 18, 2004. (R. 260). While Burley argues the treatment note only represents one specific instance of stability, the evidence points to the degree of severity, not to an absence of mental impairment, as both the ALJ and Dr. Saul acknowledge Burley suffers from major depression.

8

status as a therapist without a medical degree compared with Dr. Saul's distinction as a psychiatric specialist.[9] Id.

The ALJ's rejection of Dr. Howkins' assessment and the two GAF scores, indicating Burley suffers from a serious impairment in occupational functioning, is also justified. (R. 293-299). With regard to Dr. Howkins' medical assessment, the ALJ noted "Dr. Howkins offered no statement of reasons in support of his opinion other than to check boxes on a form to indicate that he performed an examination, reviewed relevant records and so forth."[10] (R. 293). The ALJ based his decision to reject the GAF scores with respect to the RFC determination on Dr. Saul's testimony and on circumstances preceding the assessments. (R. 299). According to Dr. Saul, GAF scores are unreliable, non-scientific assessments of overall mental functioning reflecting Burley's symptoms rather than his functioning capacity.[11] Id. Moreover, the two assessments occurred soon after Burley broke up with his girlfriend and after an episode of substance abuse, respectively. Id. The ALJ concluded the GAF scores "represent[ed] only an assessment for a specific exacerbation." Id.

Burley further argues the ALJ and Dr. Saul improperly applied a standard requiring "preclusion of activity, as a matter of law, in order to sustain a finding of a marked limitation of function." (Plaintiff's Objections to R&R 7). While this Court acknowledges such a standard would be inappropriate, the ALJ's thorough survey of the entire record led to a narrowly tailored decision

---

[9]The regulations specify that generally the opinions of specialists are entitled to greater weight. 20 C.F.R. §§ 404.1527(d)(5), 416.927(d)(6).

[10]The Third Circuit recognized that form medical assessment documents constitute "weak evidence at best" when a physician is only obligated to check a box or fill in a blank. *Mason*, 994 F.2d at 1065. Regardless of whether Dr. Howkins qualifies as a treating physician, the ALJ rejected his opinion for reasons stated above regarding Dr. Fenichel's findings. (R. 293).

[11]*See Howard v. Commissioner*, 276 F.3d 235, 241 (6th Cir. 2002)(finding "the ALJ's failure to reference the GAF score in the RFC, standing alone, does not make the RFC inaccurate").

suiting Burley's sensitive condition. Noting Burley could travel on public transportation alone and get along with board residents, the ALJ found Burley could tolerate low contacts with others and a low stress job.[12] (R. 292). Burley demonstrated the ability to concentrate by reading, watching television, and recalling numbers. (R. 292-293). Finally, the record does not support Burley's portrayal of himself as an individual who cannot care for his daily needs or one frequently involved in violent encounters.[13] (R. 41-42).

Burley lastly contends the ALJ failed to give proper weight to his testimony entailing his subjective belief in being unable to perform gainful activity. (Plaintiff's Objections to R&R 7). "Adverse credibility findings are afforded substantial deference so long as the findings are supported by specific cogent reasons. The reasons must be substantial and bear a legitimate nexus to the finding." *Cao v. United States*, 407 F.3d 146, 152 (3d Cir. 2005). The ALJ made an adverse credibility determination relating to Burley's subjective complaints based on contradictory statements regarding drug use and unsubstantiated allegations of violence since the onset date. The ALJ's specific, reasonable concerns entitle the credibility determination to substantial deference.[14]

In sum, Burley only establishes that a different conclusion could be made in light of the record. Although this Court empathizes with Burley's past suffering, the ALJ's decision is supported by substantial evidence. Accordingly this Court enters the following:

---

[12] Significantly, the ALJ defined a low stress task as "one requiring little or no decision-making, involving no especially risky duties such as carrying a weapon or handling emergencies, and demanding only slow pace or low production goals." (R. 292).

[13] With respect to violent episodes, Burley acknowledged an improvement in his ability to maintain self-control. (R. 49-50).

[14] The record establishes Burley tried cocaine yet he denied using said drug to Dr. Johnson. Similarly, the record establishes more intensive alcohol abuse than Burley acknowledged at the hearing. Dr. Adom expressed a similar concern based on his January 2004 note indicating he should check into Burley's history of substance abuse. (R. 259).

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DERRICK BURLEY | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 04-4568 |
| | : | |
| JO ANNE B. BARNHART, COMMISSIONER | : | |

**<u>ORDER</u>**

AND NOW, this 9th day of September, 2005, after consideration of the pleadings and record, and after review of the Report and Recommendation of United States Magistrate Judge Timothy R. Rice, and Plaintiff's objections, it is hereby ORDERED that:

1. The Report and Recommendation is APPROVED and ADOPTED.

2. The Plaintiff's motion for summary judgment (document 7) is DENIED.

3. The Defendant's motion for summary judgment (document 10) is GRANTED.

4. Judgment is entered in favor of Defendant and against Plaintiff.

BY THE COURT:

_____
Juan R. Sánchez. J.